C. OLIVE WRIGHT, Appellee, v. ATLANTIC & PACIFIC TEA COMPANY, Defendant, Appellant; LOUIS THOMA, Defendant.

No. 41786.

Ralph H. Munro and Starr & Jordan, for appellant.

Jones & White, and Richard C. Leggett, for appellee.

Thoma & Thoma, for Louis Thoma.

ALBERT, J.—The property in front of which it is alleged this accident occurred is known as 104-106 W. Burlington street in the city of Fairfield, Iowa. The property was owned by Louis Thoma and was rented to the Atlantic & Pacific Tea Company, both of whom, together with the city of Fairfield, were originally made parties defendant. A motion was made by Thoma for a separate trial which was granted. At the close of the plaintiff's testimony, the court directed a verdict in favor of the Atlantic & Pacific Tea Company and sent the case to the jury only as to the liability of the city of Fairfield.

On the 31st day of January, 1928, between the hours of 4:30 and 5:30 p. m., the plaintiff entered the Atlantic & Pacific Tea Company store to make certain purchases. As she emerged therefrom, she claims as she stepped from the building proper onto the sidewalk, she stepped on a piece of round or uneven ice on the sidewalk and fell, breaking her right leg, causing her great pain and suffering, that said leg was permanently injured because of the same, and is shorter than the other.

It appears that the step down from the floor of the building to the sidewalk is about 6½ inches.

It is further claimed by the plaintiff that the ridge of ice was caused by water dripping from the cornice which is on the front of said building, the building being flush with the lot line, two stories high, and having a projecting cornice which extends into the street, according to witnesses, from 18 inches to 2 feet; that said cornice was defectively constructed or permitted to become defective, and caused the water to drop therefrom to this particular spot on the sidewalk, and it had been in this condition for a number of years prior to the time of the accident.

The evidence shows that the attention of the city had been previously called to this condition, and the council had considered the matter and after discussion, one of the members of the council was supposed to have notified the property owner to remedy the defect long before this accident occurred. There is testimony from which the jury might have found that every time it rained or when there was melting snow, the water dripped from the cornice to the sidewalk, and when it was freezing weather, the same was congealed and made this particular place on the walk icy. Said ridge of ice was described by one witness as being 2x3 feet, and it was on the cement sidewalk in front of this building and a few inches therefrom.

Paraphrasing plaintiff's claim she says:

"Said defendant * * * was negligent in allowing said cornice to remain in such a condition as to permit water to drip therefrom and form ice upon said public sidewalk; that defendant was negligent in permitting said ridge of ice to remain upon the said public sidewalk."

The case went to the jury which returned a verdict in favor of the plaintiff in the sum of $3,576.35. The court overruled a motion for a new trial and rendered judgment on the verdict in favor of the plaintiff, and the defendant, the city of Fairfield, appealed.

The first point raised by the appellant is that the city cannot be held liable unless it had notice of the very defect which caused the injury, citing 43 C. J. 1026; Beirness v. City of Missouri Valley, 162 Iowa 720, 144 N. W. 628, 51 L. R. A. (N. S.) 218.

The second point is that knowledge of the existence of the conditions of weather and water, calculated to produce an icy condition of the sidewalk, is not equivalent to notice of the existing icy condition, citing 43 C. J. 1026; Eickelburg v. City of Waterloo, 197 Iowa 1219, 198 N. W. 638; Carl v. City of New Haven, 93 Conn. 622, 107 A. 502, 13 A. L. R. 1.

Assuming that these authorities hold, as appellant contends, they have no application to the situation before us in the case at bar as will be shown by a later discussion of the present case.

Section 5945, Code 1931, defining the powers of a municipality over streets and alleys, reads as follows:

"They shall have the care, supervision, and control of all * * * streets * * * within the city, and shall cause the same to be kept open and in repair and free from nuisances."

It is the theory of the plaintiff in this case and of the court in its instructions that, if the plaintiff were entitled to recover, she must establish that the aforesaid cornice was defectively constructed, or allowed to become defective, and by reason thereof, the water dripped upon this particular spot on the sidewalk below, and the same constituted a nuisance, and to hold the city liable in addition thereto, the plaintiff must show that the city had knowledge thereof and was negligent in not abating the nuisance.

On the ordinary grounds upon which these damage actions are founded, the plaintiff would not be entitled to recover because the best she could show by her evidence was that the ice upon which she claims to have slipped was there only forty-five minutes to an hour before the accident occurred, and under the well-settled rule in icy sidewalk cases, this length of time would not be sufficient to imply notice to the city, and the city, in fact, had no knowledge of this particular piece of ice. If plaintiff failed to establish the defective cornice and the forming of the ridge of ice by reason thereof, thus establishing the nuisance, the city would not be liable. The question before us, therefore, is whether or not, under this theory, the city could be held liable.

In the case of Wheeler v. City of Fort Dodge, 131 Iowa 566, 108 N. W. 1057, 1058, 9 L. R. A. (N. S.) 146, the fact situation was that a wire had been stretched from the roof of the courthouse, bordering on the street, across a traveled street to a post or fastening near the ground on the opposite side of the street. A girl, with a harness around her body attached to a pulley was placed on the wire and was supposed to hang by her teeth and to perform the dangerous feat on the wire known as the "Slide for Life". While she was in the performance of this feat, the harness broke and she fell to the street, some 70 feet below, injuring the plaintiff in the case. The question was whether or not the wire stretched across the street was a nuisance. The court said in response to a claim that the same was not in any sense a nuisance:

"With this contention we cannot agree. The fact that the wire in most of its course passed through the air above the heads of the people using the walks and carriageway below does not remove its character as an obstruction of the street. The public right goes to the full width of the street and extends indefinitely upward and downward so far at least as to prohibit encroachment upon said

limits by any person by any means by which the enjoyment of said public right is or may be in any manner hindered or obstructed or made inconvenient or dangerous."

In the case of Bliven v. City of Sioux City, 85 Iowa 346, 52 N. W. 246, this court held that a defective billboard, standing wholly in the street between the sidewalk and the abutting property, is a defect in the sidewalk, within the meaning of section 1, chapter 25, of Acts of the Twenty-second general assembly, providing that no action shall be brought against a municipal corporation, on account of injuries resulting from defective streets or sidewalks, after six months from the date of the injury, unless written notice of such injury be served upon the corporation within ninety days after its occurrence.

This doctrine is reaffirmed in the case of Cason v. City of Ottumwa, 102 Iowa 99, 71 N. W. 192. See, also Incorporated Town of Ackley v. Central States Electric Co., 204 Iowa 1246, 214 N. W. 879, 54 A. L. R. 474.

It seems to be also well settled that a municipality is liable, as a general rule, for injuries caused to travelers by reason of the falling of a tree or limb thereof. 43 C. J. 1030, section 1809.

In the case of Olson v. City of Worcester, 142 Mass. 536, 8 N. E. 441, it is held that where a defect is produced by some known permanent cause as by a water conductor upon a building adjacent to the sidewalk which emptied its water upon the sidewalk, and had been there for a long time, the existence of the cause might properly be considered by the jury as to whether the officers of the city might have had notice of the defect by the exercise of proper care.

In Beane v. City of St. Joseph, 215 Mo. App. 554, 256 S. W. 1093, in an action against the city and the owner of a building for injury, the evidence showed that for a year water fell from the roof and was not confined within the downspout, but fell down the outside thereof so it fell across the sidewalk, thereby forming ice whenever the temperature was sufficiently low, was held sufficient evidence of constructive notice to the city of the dangerous condition causing the injury complained of; it being immaterial that the particular ice on which plaintiff fell might have frozen only the night before.

As sustaining this line of thought see 43 C. J. 1029, sections 1807, 1808, 1809, and 1810.

In the case of Shumway v. City of Burlington, 108 Iowa 424, 79 N. W. 123, water had been for several years accumulating on adjacent premises flowing thereon from a well or spring through a hole in a fence cut for that purpose over the walk of the defendant where the accident occurred. In discussing the case (loc. cit. 427 of 108 Iowa, 79 N. W. 123, 124) this court said:

"It is said that a municipal corporation is not liable for injuries caused by the freezing of water in a night, because negligence cannot be imputed to it unless it has had notice a sufficient length of time to enable it to remedy the defect. But the evidence in this case tended to show that water from adjacent premises had been discharged through a hole in the fence, over the walk, for so long a time that the defendant should be charged with knowledge of it. The effect of a freezing temperature upon water flowing onto a sidewalk, and the dangers to be apprehended from ice on a sloping walk, were, it must be presumed, known to the defendant. Whether under all the circumstances disclosed by the evidence, it was negligent in not anticipating the dangerous condition of the walk, and providing against it, was a question for the determination of the jury."

McQuillin on Municipal Corporations (2d Ed.) vol. 7, p. 146, states the rule as follows:

"If the municipality has the power to declare and abate nuisances, and it has actual or constructive notice of the dangerous condition of a structure on private property so near the street as to threaten the safety of persons traveling thereon, it is liable to persons in the street injured by the fall of such structure, the negligence being the failure to remove the structure after knowledge of its condition and the apparent danger."

It follows from the above that the theory of the plaintiff and of the court in its instructions is well-founded, and leaves to the jury the question of whether or not the fact situation warrants the application of this doctrine. In other words, there was evidence which the jury might find showed that the defective condition of the cornice constituted a nuisance, and the city, long prior to the time of the accident, had notice thereof, and it was negligent in failing to abate such nuisance. There was sufficient evidence to take the case to the jury, and the question of contributory negligence was for the jury.

What we have heretofore said answers all of the contentions made by the appellant, and therefore, the action of the district court in entering judgment is affirmed.—Affirmed.

All Justices concur, except UTTERBACK and EVANS.