STATE OF IOWA, Appellee, v. HARRY HARTWICK, Appellant.

No. 45032.

Mᴀʀᴄʜ 5, 1940.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Jᴜɴᴇ 20, 1940.

Charles W. Bowers, J. Rudolph Hansen, and Paul Proctor, for appellant.

Fred Everett, Attorney General, Jens Grothe, Assistant Attorney General, T. A. Goodson, Special Prosecutor, and Donald W. Harris, County Attorney, for appellee.

HALE, J.—The defendant, Harry Hartwick, was jointly indicted with his sister, Mae Hartwick, on a charge of subornation of perjury, alleged to have been committed in a civil action for about $460, brought against them by E. K. Bekman, for legal services rendered in the trial of litigation involving a school district in Davis county. It was claimed in the indictment that Harry and Mae Hartwick procured one Francis Dwight to testify that he had seen the money paid by Harry Hartwick on the street in Ottumwa. Dwight described the money and said that he had heard Bekman, the plaintiff in the action, tell Harry that he had paid him in full. Substantially the same testimony, alleged to be false, was given by other witnesses in the Bekman trial. The indictment charged the two defendants with soliciting and procuring the false testimony. Separate trials were had, and on trial testimony was given by Francis Dwight to the effect that the defendant had given him a piece of paper setting out the false testimony to which he was to swear; that he (Dwight) had received $9.75 for his testimony, and that it was given at the request and instigation of Harry and his sister Mae. Defendant testified that he had actually paid Bekman $500 on June 22, 1937, in front of the Sears, Roebuck store in Ottumwa, in the presence of Francis Dwight and other witnesses, and denied paying the witnesses any money for their testimony. The defendant's sister Mae also testified to the same effect. Evidence was offered by the State in rebuttal as to the defendant's reputation for truth and

veracity. The jury returned a verdict of guilty and defendant appeals.

I. As his first assignment of error defendant claims that the court erred in omitting to instruct the jury as to what were the material parts of the indictment. It is true, as claimed, that it is the duty of the court to inform the jury as to what parts of the charge are material, but on examination of the instructions we do not see that the court failed in this respect. The indictment is set out in instruction No. 1. The defendant's argument is quite technical, and we do not agree that the instruction did not limit the alleged false evidence given by Dwight to the alleged facts in the indictment. The claimed false testimony was a necessary and material allegation of the indictment, and the burden was on the State to prove that Harry did induce Dwight to give the testimony. We think the instruction quite clearly sets out that fact.

Defendant also claims that instruction No. 5 failed to inform the jury that false testimony was a necessary and material allegation. As to this the court plainly and specifically stated in instruction No. 5, as one of the elements necessary to a conviction, that the said Harry Hartwick wilfully and intentionally induced and procured the said Francis Dwight to give said false testimony, and aided and abetted Mae Hartwick in inducing and procuring Francis Dwight to give said false testimony; and in division 2 of said instruction No. 5 the court also told the jury that they must find ''That his said testimony was perjured testimony as perjured testimony is defined to you in these instructions.'' Later on, in instruction No. 7, which is referred to in instruction No. 5, the court fully instructed as to the definition of perjury, and defined perjury, applying it to the case of Bekman v. Hartwick, and instructing the jury what would be material evidence in such Bekman case.

The instructions as a whole clearly and definitely point out to the jury what the material allegations of the indictment are, and what it is necessary that the jury find before returning a verdict of guilty.

II. The complaint against instruction No. 5 we think is also without merit. This instruction summarizes the elements necessary to conviction. It could not have been complete of itself, and was not so intended, and it has so often been held by this court that the instructions must be considered as a whole that we need do no more than call attention to the instruction.

The objection is in effect that the instruction did not tell the jury all that was necessary to be found. As stated heretofore, by reference instruction No. 7, which defined the crime and the material averments necessary to be proved, must be read in connection with instruction No. 5, and when so read, the jury were instructed as to the essentials of the crime necessary to be found by them. Complaint is also made in regard to this instruction, that there was no evidence to show that Hartwick wilfully or intentionally induced Dwight to give such testimony. On examination of the record we find ample testimony to such effect. Nor do we find any conflict, for the reason that, as heretofore stated, the instruction is tied up by reference to other instructions and must be so interpreted. Counsel argue that the materiality of the alleged perjured testimony is a question of law. In this case the court recognized that fact, and in instruction No. 7 gave the material essentials of the charge.

Without setting out in full instructions Nos. 5 and 7, to which reference has heretofore been made, we think that the objection that they are conflicting is too critical. The two instructions seem to have been carefully prepared and fit into each other by reference so as completely to set forth and tell the jury the essentials necessary to conviction. Nor do we think valid the objection made to these instructions that the jury were not charged that the testimony given by Dwight must have been wilfully and corruptly false. In the first paragraph of instruction No. 7 the court definitely states that the State must prove to the satisfaction of the jury, or beyond a reasonable doubt, that Francis Dwight was duly sworn and examined as a witness and gave testimony substantially as charged in the indictment, and "further that said testimony was wilfully and corruptly false, and known by Francis Dwight to be false."

This, in connection with instruction No. 5 and with instruction No. 6, which is a definition of perjury and subornation of perjury, gave the jury such elements necessary to conviction.

III. Defendant complains of instruction No. 15, which is as follows:

"The State has introduced evidence in this case tending to show that the general reputation of the defendant, Harry Hartwick, for truth and veracity in the community in which he lives was previously bad.

"Now, you are told that a person's general reputation for truth and veracity is what is generally said of him in the community in which he lives with respect to speaking the truth, and this testimony has been received in evidence for the purpose of testing the credibility of the defendant as a witness, it being presumed in law that a man whose general reputation for truth and veracity is bad, would be less likely to tell the truth than one whose reputation is good. It is, however, for you, and you alone to determine what weight you will give to this testimony, as well as to all the other testimony that has been introduced in this case."

The defendant objects to that part of the first paragraph of the instruction beginning with the words "this testimony" and ending with the word "good." Defendant attacks this on the ground that the law does not presume that a man whose general reputation for truth and veracity is bad would be less likely to tell the truth than one whose reputation is good; that the law does not raise such presumption as a matter of law; that every witness is presumed to tell the truth, and that, when it is sought to overcome such bad reputation, the question of truth and veracity is for the jury to determine from all the facts and circumstances which would test the credibility of the witness, and that the proof of bad reputation in such matters relates solely to the credibility of the witness, but does not as a matter of law make him unworthy of belief, or raise such presumption as a matter of law, or make his testimony untrue, or destroy its credibility, or require that it be corroborated.

In support of his contention defendant cites State v. Voelpel, 208 Iowa 1049, 226 N. W. 770, and also various authorities as to the presumption that every witness is presumed at the outset to tell the truth. As to the latter presumption there is no dispute. See Windahl v. Hasselman, 198 Iowa 1001, 200 N. W. 583, and cases cited therein.

The instruction contained in the Voelpel case is similar to the one in the case at bar, but there are certain differences that we think distinguish the two cases and the two instructions. Defendant argues that the presumption in this case is made conclusive. We do not think that that has been the holding of this court. In an interesting discussion of the use of the word "presumption," found in an opinion by Justice Evans in the case of Anderson v. Chicago, R. I. & P. R. Co., 189 Iowa 739, 745, 175 N. W. 583, 585, an instruction is approved where the wording of the instruction was that "the law presumes," and the same argument is made as in the instant case as to the use of the words. The court says:

"It was, nevertheless, recognized therein [Bell v. Incorporated Town of Clarion, 113 Iowa 126, 84 N. W. 962] that the word 'presumption' is not infrequently used as the equivalent and synonym of the word 'inference.' It is undoubtedly true that the word 'presumption' is popularly used in such sense, and that such use thereof presses itself with great persistency upon lawyers and judges. Such use of the word has been very persistent in the instructions of trial judges; and we have ourselves recognized the qualified meaning of the word in such case as is here presented." Citing various cases, and reviewing the instruction in Merchants Trans. & S. Co. v. Chicago, R. I. & P. R. Co., 170 Iowa 378, 150 N. W. 720.

"On the whole, we think that the use of the word 'presumption' in such qualified meaning is not misleading to the jury, if such use is accompanied with proper qualification pertaining to the burden of proof."

The instruction was approved and the case affirmed.

In the Voelpel case, while the discussion was not confined

to the form of impeachment in that case, but the case related and was decided only as to that arising by reason of previous conviction of a felony, the opinion states that as far as the court has been able to ascertain, no court of last resort, and no text-writer, has ever declared that the law presumes that a person who has been convicted of a felony is impeached ipso facto. A reading of the whole opinion shows that the discussion therein is mainly as to the effect of a conviction for a crime in establishing impeachment, and it will be noted that the question of impeachment was not indicated in the instruction as for the determination of the jury, but the jury was in effect told that the question of impeachment had been determined by the admission of the witness, and that a person who had committed a felony is less worthy of belief than a law-abiding citizen. In the instruction in question herein, the question of the weight of defendant's testimony was left for the jury, and the jury alone, and they were not instructed that he had been impeached, or that he would not tell the truth, or that they could disregard his testimony. They were only informed that a witness thus impeached would be less likely to tell the truth than one whose reputation is good. We do not think there can be any dispute that this is the rule we apply in ordinary business transactions in our everyday life, and that our common experience so tells us. It seems that this was more a statement of the reason for such a rule in impeachment than any direction to the jury. The general rule is unquestioned as to how a jury may treat the testimony of a person who has been successfully impeached. If the jury applied the instruction as we think its evident meaning is, and used the ordinary construction that is in general use in the application of the words therein, we do not feel that the defendant has been prejudiced. In this application of a well-known rule to a rule of evidence, the fact of the use of the word in the sense of inference, or probability, or assumption, is recognized by Webster's New International Dictionary, which supports the view taken in the case of Anderson v. Chicago, R. I. & P. R. Co., supra. It was in no sense a presumption of guilt, but could be and was only applied to the defendant as

a witness. We apply many presumptions in criminal as well as civil cases; the presumption that officers will do their duty, the presumption that persons had due trial, the presumption of regularity of proceedings, that the grand jury proceedings were regular; the presumption of death, the presumption that persons intend the natural and probable consequences of their own deliberate acts which ordinarily do follow, and the presumption of a specific intent—all these are applied without question. And while there is not any division of degrees of impeachment, yet the character of the impeaching testimony must necessarily have consideration.

IV. Defendant complains of instruction No. 9, in which the court instructed the jury that: "Certain evidence has been admitted in this case tending to prove other claimed perjuries and of other acts of the defendant and of his sister, Mae Hartwick." Defendant insists that the use of the words "certain evidence" indicates the opinion of the court as to quantity and weight of the evidence. With this we cannot agree. The cases cited in which objection was made to the use of the word "some" do not seem to us to be in point. In the cases cited this was held to be prejudicial for the reason that it minimized the testimony of the defendant. In this case, however, the testimony itself was the State's testimony and unfavorable to the defendant, and if the tendency in this case was to minimize its effect it operated more favorably to the defendant than to the State. See cases cited by defendant: State v. Donovan, 61 Iowa 369, 16 N. W. 206; State v. Dorland, 103 Iowa 168, 72 N. W. 492; State v. Rutledge, 135 Iowa 581, 113 N. W. 461.

Objection is also made that the word "certain" means established, not to be doubted; assured, etc. We are satisfied that no jury could apply this meaning to the evidence; a phrase so commonly used by practically all courts and all persons could hardly be understood in this connection to have meant fixed and established, and the jury could not have so understood it. In the sense used in the instruction and in its everyday use it must have been considered as merely stating that there was evidence of the nature described.

The same objection is made as to instructions Nos. 13, 16, and 19. As stated, we find no error here.

As to the other objection, that the words "other acts of the defendant and of his sister" were indefinite, we think they were sufficient to call the attention of the jury to the other facts and that it was not necessary that the court set out and review the testimony referred to.

V. In instruction No. 16 the court instructed the jury that evidence had been introduced tending to show that the defendant, Harry Hartwick, had solicited the witness Dwight to give the claimed perjured testimony, and that such solicitations, or some of them, were made in Appanoose county. The jury were further instructed that if the defendant continued in his attempt to procure the witness Dwight to commit perjury, and called said witness and had him testify as a witness in Davis county knowing or believing that the said Dwight would give perjured testimony, and if said Dwight did in fact commit perjury in giving such testimony in Davis county as charged, the defendant could be prosecuted and convicted of the crime in Davis county notwithstanding that the solicitations or some of them were made in Appanoose county. The objection to the rule as to venue as laid down in this instruction is without merit and no authority is cited therefor. Section 13451 of the Code of 1935 provides that:

"When a public offense is committed partly in one county and partly in another, or when the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, jurisdiction is in either county, except as otherwise provided by law."

See, also, State v. George, 206 Iowa 826, 221 N. W. 344, and cases cited therein. We think the instruction was clearly applicable and duly authorized, not only by the Code but by our decisions.

VI. Under division 8 of defendant's assignment of errors is found an objection to instruction No. 8, which gives the rule as to corroboration in cases of this kind. Through error the

argument does not give the entire instruction. An examination of the record shows that the words "but all of the essential elements of the crime of perjury must be proven by the State by two or more witnesses" were omitted from the argument. The objection was probably inadvertently made, but we think that in all respects the instruction as to corroboration was correctly given, and refer to it here only that the record may clearly show the correction in the quotation of the instruction.

■ VII. Defendant objects to the action of the court in admitting a large number of questions which such defendant claims were admitted over his objection as leading. The questions are set out in the argument and cover more than eleven pages. It is impracticable to undertake to review these rulings in detail, but we have examined the various rulings and do not find that in any of them the court has abused its discretion. A large number of the questions we would not consider as leading or in any sense suggestive. In many cases the question is so framed as only to call the witness's attention to the topic. We find no error here.

■ VIII. Question was raised as to misconduct of the jury. We have examined the evidence of the one juror who was examined on the subject and find no error in the court's overruling this objection. Nothing disclosed by the testimony of the witness would indicate misconduct. The matters which she alleges were discussed by the jury were some relating to the defendant's father's estate, and a school controversy in which defendant had been engaged, and were all referred to in the cross-examination of certain character witnesses and were admitted by the court, and the juror herself testified that she had agreed to the verdict and come into court, and that she did not consider anything except the evidence admitted in court and paid no attention to anything said by anyone which was not in the evidence. We think clearly the evidence does not indicate misconduct and that the court was correct in overruling that ground of defendant's motion for new trial.

We have set out in detail, perhaps greater detail than is needed, the objections urged to various instructions and rulings

of the court. We hold that the instructions were correct and covered the case, and that read as a whole, as all instructions are required to be read, there is no just ground of complaint by the defendant. We find no error and the case is, therefore, affirmed.—Affirmed.

HAMILTON, C. J., and STIGER, SAGER, BLISS, MITCHELL, and MILLER, JJ., concur.

RICHARDS and OLIVER, JJ., dissent.