BESS BEYER, appellee, v. CITY OF DUBUQUE et al., appellants.

No. 51901.

(Reported in 139 N.W.2d 428)

JANUARY 11, 1966.

Romolo N. Russo, of Dubuque, for appellant City of Dubuque.

Raymond R. Stefani and G. K. Thompson, both of Cedar Rapids, for appellant·Marion J. Ryder.

Francis H. Becker and Michael A. Stapleton, both of Dubuque, for appellee.

RAWLINGS, J.—On December 26, 1961, at two p.m., plaintiff was injured as the result of a fall on an ice covered public sidewalk just north of Fifth Street and on the east side of Locust Street in Dubuque.

A building owned by defendant Marion J. Ryder, and located at the northeast corner of these streets, abutted the sidewalk. From the street intersection to about the center of the Ryder building the sidewalk was clear, but from that point on to the next property line it was covered with slippery packed ice and snow.

At time of plaintiff's fall there was no abrasive material or salt on this ice nor had it been chopped up.

There is no dispute as to time and place of the fall, condition of the sidewalk in the area of the fall, or ownership of the abutting property.

Plaintiff sued the City of Dubuque and Marion J. Ryder. Upon trial the jury returned a verdict for plaintiff in the sum of $25,000, judgment was entered accordingly against both defendants.

Motions by defendants for judgment notwithstanding the verdict or for new trial were overruled and they appealed.

I. The abutting property owner contends she is not liable.

For brevity and convenience the apartment house owned by defendant Ryder will be sometimes referred to as the building.

The eaves and gutter on the west side of the building overhang the street. The gutters connect at the northwest corner with a downspout which is designed to carry water from the roof away from the sidewalk.

However, there is testimony to the effect the gutters and downspout on the building were inadequate or defective, as a

result of which water dripped and leaked from them onto the sidewalk.

Captain O'Brien of the Dubuque police department, called as a witness by defendant City, said it appeared to him water running into the downspout leaked and then drained down the side of the building toward the sidewalk area. According to this witness ice covering the connection of the downspout with the gutter was so thick he could not tell whether the ice supported the pipe or whether the pipe actually connected with the gutter.

William Gerlach, a tenant in the building, called as a witness by defendant Ryder, stated that on Thursday or Friday after December 12, it thawed and he got the sidewalk fairly clean *except in the area where water was running in from the melting snow on the roof of the building and from snow on the street curb*. He said it snowed December 22, and some boys tried to clean the sidewalk but part of the area could not be cleared because ice was mixed in with the snow. He then unsuccessfully attempted to chip off the ice. This witness also stated there were icicles on the fence adjoining the building and adjacent to the sidewalk near where plaintiff fell which had formed from the roof down and that water which came down and did not freeze went into the area where plaintiff fell.

Another witness, Mr. Genszler, called by plaintiff, said he walked over this sidewalk every day and the place where plaintiff fell had been slippery and dangerous for about two weeks; attempts had been made to clean the sidewalk, but the ice could not be removed; there was no snow on top of the ice; and the snow had packed and frozen over, and was smooth and rough in spots. He stated ice came from the building, that it appeared to him there was an overflow right at the corner of the building, and he saw water coming down from that direction which would then freeze over.

Plaintiff's testimony discloses the ice on the sidewalk was old, thick, rough and bumpy.

Because it probably speaks more eloquently of the situation as it existed at the place where plaintiff fell than could the oral testimony of any witnesses, plaintiff's exhibit 3 is here reproduced.

PLAINTIFF'S EXHIBIT 3

We are satisfied the evidence was sufficient to present a jury issue as to liability of defendant Ryder. In Updegraff v. City of Ottumwa, 210 Iowa 382, 226 N.W. 928, plaintiff had fallen on an icy sidewalk, sued the city and adjacent property owner and recovered from the latter. We affirmed. There a downspout carried water to a tile, thence into a sewer. As snow on the roof of

the building melted, the water escaped from a hole in the downspout onto the sidewalk and there froze.

In the cited case, 210 Iowa at 384, 226 N.W. at 929, we said:

"The duty of maintaining the streets and sidewalks in a reasonably safe condition is imposed by statute upon cities and towns. Section 5945, Code, 1927. [Section 389.12, Code, 1962] The duty thus imposed by statute upon municipalities does not, however, relieve property owners or others from the duty not to obstruct or place dangerous instrumentalities thereon, so as to endanger the safety of the public rightfully using the same, nor from liability for damage occasioned thereby. [Authorities cited.] This rule has been applied in many cases and under a great variety of facts. It is elementary that the owner of a building abutting upon a public street may not lawfully collect water accumulating from rain or snow upon the roofs of buildings, and by some artificial means discharge the same upon the sidewalk or street, where it freezes and forms ice. [Authorities cited.] Nor may such owner negligently permit the water to escape from a *defective downspout or other agency* and accumulate upon the sidewalk so as to freeze and cause injury to others." (Authorities cited.) (Emphasis supplied.)

See also Wright v. Atlantic & Pacific Tea Co., 216 Iowa 565, 246 N.W. 846; Ahern v. City of Des Moines, 234 Iowa 113, 12 N.W.2d 296; City of Des Moines v. Barnes, 238 Iowa 1192, 30 N.W.2d 170; 39 A. L. R.2d 773, 802; Franzen v. Dimock, Gould & Co., 251 Iowa 742, 101 N.W.2d 4; and 40 C. J. S., Highways, section 258, page 305.

We are not here dealing with a case involving some structure on private property which caused snow to accumulate naturally on a public sidewalk. Rather, we are confronted with the matter of water being discharged from private property which, with water from natural sources, accumulated and then froze on a public sidewalk.

This defendant seems to lean rather heavily on Rudd v. Lyceum Dramatic Productions, 250 Minn. 328, 85 N.W.2d 61. However, that case does not stand on the same factual basis as does the one now before us. In the Rudd case it appeared water

dripped on the sidewalk from a cornice and some water came down around a spout and collected in holes in the sidewalk. The court held the evidence did not disclose whether any material amounts of water were artificially cast upon the sidewalk or in sufficient amounts to cause or aggravate the hazard, but remanded for new trial.

There was sufficient probative evidence in the case now before us from which the jury could reasonably conclude the ice on the sidewalk caused plaintiff to fall, that the water causing this ice came from melting ice and snow on the Ryder property, and from melting snow on the street or street curbing. Rule of Civil Procedure 344(f)(10), (17).

In other words the jury could reasonably have found the ice formed on the sidewalk as the result of a combination of artificial and natural causes. Furthermore, and of even greater importance, is the fact that there was sufficient evidence from which the jury could find the hazardous condition existed only at and in the area where water was caused to flow from the Ryder property.

II. Defendant Ryder also challenges the manner of selection of the trial jury.

As previously stated, plaintiff sued the City of Dubuque *and* Marion J. Ryder. Rule of Civil Procedure 24. No effort was made by defendant Ryder to secure a separate trial. Rule of Civil Procedure 186.

In the course of impaneling the jury, one prospective juror disclosed he was a taxpayer in the City of Dubuque. Plaintiff exercised challenge for cause. Over objection by defendant Ryder the juror was excused. Counsel for plaintiff then made known all prospective jurors who were taxpayers in Dubuque would likewise be challenged. The court then stated each such prospective juror would be excused and accorded to counsel for defendant Ryder a standing objection and exception to each such ruling. Defendant Ryder asserts the challenge made is not one for cause prescribed by law (Rule of Civil Procedure 187), and the excusing of any such prospective jurors was prejudicial to her. We cannot agree.

The laws of Iowa provide an orderly and reasonable method

for selection and call of a jury panel, and for the impaneling of a trial jury. Chapters 607–609, Code, 1962, and Rule of Civil Procedure 187.

In Schwickerath v. Maas, 230 Iowa 329, 336, 337, 297 N.W. 248, we explained in concise terms the basic right to jury trial and the purpose of challenges, and there said:

"The Constitution of Iowa, Article I, section 9, provides that the right of trial by jury shall remain inviolate. Necessarily, this implies a jury, fair, impartial, disinterested and unbiased. To obtain such jury, the machinery must be adequate for the purpose, and any restrictions in the processes which unreasonably prevent litigants or their counsel from obtaining such a jury, infringe upon this constitutional right. Under the statutes and practice in Iowa, two forms of challenges have been developed, i.e., challenges for cause and peremptory challenges * * *. In the former, specific statutory grounds have been enumerated. * * * In the latter, however, our statutes, because of the impossibility of any enumeration which could encompass and envisage all of the varieties of relationships which might and do bear heavily upon the selection of jurors, merely provide 'a peremptory challenge is an objection to a juror for which no reason need be given, but upon which the court shall exclude him' * * *."

In an earlier case, Johnson v. City of Waterloo, 140 Iowa 670, 119 N.W. 70, there was a trial to jury on the issue of severance of land from defendant city. Four members of the panel were excused because they were resident taxpayers in Waterloo. On appeal this court held no basis for excuse of the prospective jurors actually existed since a determination of the issues would not affect the matter of taxes. But in the cited case, 140 Iowa at 671, 672, 119 N.W. at 71, we said:

"For all that appears, however, there was no prejudice. The defendant had no right to a trial before any particular juror or jury. All it could insist upon was a competent and impartial jury, and, as the record does not affirmatively show that it exhausted the peremptory challenges to which it was entitled, the jurors before whom the cause was tried are presumed to have been acceptable to it. * * * In States, where, as in this, the right to trial before any particular juror or jury is denied, the ruling

by which a juror is excused without good cause is not reviewable on appeal, unless it also is made to appear from the record that this has resulted in the trial of the issues before a partial or incompetent jury. \* \* \* The theory of these decisions is that, though a qualified juror be excused, another equally competent and fair minded will be selected in his stead, and, if a competent and impartial jury is finally secured before whom the cause is tried, neither party is in a situation to complain. What is a competent and impartial jury necessarily depends on the facts of each particular case." (Emphasis supplied.)

See also State v. Critelli, 237 Iowa 1271, 1279–1281, 24 N.W.2d 113, and 50 C. J. S., Juries, section 195, page 927.

Then in Alber v. Dubuque, 251 Iowa 354, 363, 101 N.W.2d 185, 81 A. L. R.2d 699, this court said:

"Throughout the history of the state it has been customary that where a claim for damages is made against a city, property owners in the city are disqualified as jurors. The basis for the disqualification is that they have a vital interest in the outcome of the case. If a judgment is rendered against the city the property owner as a taxpayer will be obligated to pay a part of it. Even though a peculiarly fair-minded juror might state that he would not be prejudiced, yet it is an unfair position in which to place a juror, and the plaintiff in the case. Kendall v. City of Albia, 73 Iowa 241, 34 N.W. 833; Geiger v. Payne, 102 Iowa 581, 69 N.W. 554; Cason v. City of Ottumwa, 102 Iowa 99, 71 N.W. 192; Johnson v. City of Waterloo, 140 Iowa 670, 119 N.W. 70.

"Not only is it customary and for the best interest of all parties concerned that jurors under the circumstances above outlined be excused, but the selection of jurors is peculiarly within the discretion of the trial court.

"Furthermore, in the case at bar there is no showing as to any prejudice suffered by appellant because the taxpaying jurors were excused."

In support of the foregoing see also United States v. Chapman, 10 Cir., 158 F.2d 417; 31 Am. Jur., Jury, section 189, page 164; and 50 C. J. S., Juries, section 216, page 951.

III. However, defendant Ryder contends it was prejudicial to her to excuse taxpayer veniremen, that she was an un-

willing subject of discrimination by exclusion of a segment of her peers from the jury panel, and she was thereby deprived of the fair trial guaranteed her by the Iowa Constitution. We find no merit in this claim.

Clearly the prohibition to which this defendant alludes is that of excluding any given class of people from a jury panel by a systematic and arbitrary process.

A case in point is Hoyt v. Florida, 368 U. S. 57, 58–65, 82 S. Ct. 159, 161–164, 7 L. Ed.2d 118, 120–124. There the accused, a woman, claimed trial before an all male jury violated her constitutional rights. The challenged Florida law provided, in substance, that no female person be called for jury duty unless such person declared her desire to be placed on a jury list. In affirming a conviction, the court said in part:

"At the core of appellant's argument is the claim that the nature of the crime of which she was convicted peculiarly demanded the inclusion of persons of her own sex on the jury. * * * It is claimed, in substance, that women jurors would have been more understanding or compassionate than men in assessing the quality of appellant's act and her defense of 'temporary insanity.' * * *. [Authority cited.]

"Of course, these premises misconceive the scope of the right to an impartially selected jury assured by the Fourteenth Amendment. That right does not entitle one * * * to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions. * * *

"* * * We of course recognize that the Fourteenth Amendment reaches not only arbitrary class exclusions from jury service based on race or color, but also all other exclusions which 'single out' any class of persons 'for different treatment not based on some reasonable classification.' * * *

"* * * Where, as here, an exemption of a class in the community is asserted to be in substance an exclusionary device, the relevant inquiry is whether the exemption itself is based on some

486

reasonable classification and whether the manner in which it is exercisable rests on some rational foundation. * * *

"In neither respect can we conclude that Florida's statute is not 'based on some reasonable classification,' * * *.

"Appellant argues that whatever may have been the design of this Florida enactment, the statute in practical operation results in an exclusion of women from jury service, because women, like men, can be expected to be available for jury service only under compulsion. * * *

"This argument, however, is surely beside the point. Given the reasonableness of the classification involved * * *, the relative paucity of women jurors does not carry the constitutional consequence appellant would have it bear. 'Circumstances or chance may well dictate that no persons in a certain class will serve on a particular jury or during some particular period.' [Authority cited.]

"We cannot hold this statute as written offensive to the Fourteenth Amendment."

■ Fundamentally, the class exclusion from a jury panel, which the law abhors, is systematic and arbitrary discrimination in the selection of members of a panel, not the orderly and reasonable rejection of prospective jurors by exercise of challenge, either peremptory or for cause. In this connection the word "arbitrary" means not according to law or without reason. Crowley v. Johnson County, 234 Iowa 142, 149, 12 N.W.2d 244. See also State ex rel. Indiana Department of Conservation v. Barber, Ind., 200 N.E.2d 638, 641.

■ We are satisfied that when an action in tort is brought against a municipality and others as parties defendant, plaintiff may nevertheless effectively challenge any members of the jury panel who are taxpayers in the defendant municipality. Broadway Manufacturing Co. v. Leavenworth Terminal Ry. & Bridge Co., 81 Kan. 616, 106 P. 1034, 28 L. R. A., N. S., 156.

Clearly the exclusion of Dubuque taxpayers from the jury panel was based upon an established, accepted, reasonable and lawful classification. In fact the trial court acted properly to the end that all parties in the case might have a fair trial.

IV. Defendants assert the verdict is not supported by the evidence.

At time of trial plaintiff was 70 years old. The life expectancy of a person of that age is 10.12 years. Prior to her fall plaintiff had been active, did all of the housework, and went with her husband for daily walks.

She fell on her right hip, heard a crack, fell back onto her right shoulder, heard another crack, and immediately felt intense pain.

She was hospitalized. X rays of the right arm disclosed an impacted fracture of the surgical neck of the humerus. This was treated conservatively by an arm sling and splint. X rays of the right hip showed an intertrochanteric fracture requiring an open reduction and insertion of a Smith-Peterson nail.

These fractures and the operation were all painful, but in addition plaintiff developed pain in her back.

About two weeks after the fall she was released from the hospital, but was bedfast at home for two months.

She was then permitted use of a wheelchair, and started moving about with the aid of a walker. All this time plaintiff's back caused her more and more pain.

In November 1962, or about eleven months after the fall, she experienced a sharp pain in her back, could not move, and was again hospitalized. Examination disclosed advanced osteoporosis with a collapse of thoracic vertebrae, 11 and 12.

Plaintiff again returned home, still suffering extreme pain. Her condition worsened. Less than a year later examination disclosed compression fractures of the four thoracic vertebrae, 9 to 12.

The medical testimony as to cause of this back trouble is in dispute.

One doctor, called as a witness by defendants, said it was due to post-menopausal osteoporosis, but admitted disuse osteoporosis can develop within two or three months following immobilization.

However, one of plaintiff's doctors *assumed*, upon the basis of medical experience, the osteoporosis with which plaintiff was afflicted resulted from her immobilization. This medical witness had examined plaintiff at the time of the fall and then found no appreciable osteoporosis. He also stated 20 years had passed

since her menopause, and postmenopausal osteoporosis would have disclosed itself much earlier. Also, in his opinion, postmenopausal osteoporosis is a generalized process and plaintiff's affliction was localized, not involving the entire skeleton.

Another doctor stated it was entirely within medical reason that a fracture of plaintiff's hip and shoulder could be associated with injuries to her spine, and felt the fractures were part of her illness or accidental injuries.

The apparent thrust of defendants' argument is that there was no showing plaintiff's back condition was probably caused by her fall. If so, such argument has no standing.

■ We have said "an assumption" is equivalent to presumption, inference or probability. State v. Hartwick, 228 Iowa 245, 252, 290 N.W. 523. And "to presume" means to form a judgment on probable ground, subject to confirmation or invalidation by further evidence or proof. State v. Ramsdell, 242 Iowa 62, 68, 45 N.W.2d 503.

Furthermore, we have held expert evidence with less substance than that here presented, coupled with nonexpert testimony disclosing the party injured had no such affliction prior to the accident in question, was sufficient to support the issue of proximate cause. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 380, 101 N.W.2d 167. See also Kaltenheuser v. Sesker, 255 Iowa 110, 117, 121 N.W.2d 672.

The evidence in the case now before us discloses plaintiff, at time of trial, had been unable to do any work, or to care for herself since the accident, and had incurred medical and hospital expenses in the total sum of $1351.42.

We are satisfied the verdict returned in plaintiff's favor is reasonably supported by the evidence.

V. Defendants also assert the verdict is excessive and the court should, in any event, have ordered a remittitur. With this we are unable to agree.

Plaintiff's injuries were serious. In fact, they were so serious as to incapacitate her.

Nothing is to be gained by a lengthy dissertation upon the issue here presented.

■ We have said repeatedly a comparison of verdicts is sel-

dom helpful. Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 414, 86 N.W.2d 822. To the extent any comparisons may be of assistance, see annotation, 16 A. L. R.2d 3.

 It is not for us to invade the province of the jury. We will not alter a verdict unless it is (1) so flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support. Tucker v. Tolerton & Warfield Co., supra; Woode v. Kabela, 256 Iowa 622, 633, 128 N.W.2d 241, 247; Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807; and Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W.2d 85. Also, in weighing verdicts we have given recognition to the diminished purchasing power of the dollar. Brophy v. Iowa-Illinois Gas and Electric Co., 254 Iowa 895, 899, 119 N.W.2d 865.

The jury returned the verdict, the trial court deemed it fair and reasonable, and there is no good or compelling cause for us to now interfere. Tucker v. Tolerton & Warfield Co. and Shover v. Iowa Lutheran Hospital, both supra; White v. Walstrom, 254 Iowa 646, 648, 118 N.W.2d 578; and Grant v. Thomas, 254 Iowa 581, 585, 118 N.W.2d 545.

We are satisfied there was no error on the part of the trial court in overruling the motion for judgment notwithstanding the verdict, and the motion for new trial filed herein by defendants. —Affirmed.

All JUSTICES concur except JUSTICE BECKER who takes no part.