**Coy W. McBROOM, Jr., Appellee,**

v.

**STATE of Iowa, Appellant.**

**No. 2–56976.**

Supreme Court of Iowa.

Feb. 19, 1975.

Rehearing Denied March 19, 1975.

with an adequate guard and plaintiff had not been instructed in its safe operation.

A plexiglass guard had been placed on the machine but it left a six inch opening through which a hand could be placed. Plaintiff's evidence included a safety engineer and the recommendations of the National Safety Council (Accident Prevention Manual, 1959 edition) and the Principles and Techniques of Mechanical Guarding Bulletin No. 197 of the Bureau of Labor Standards, U. S. Department of Labor. This evidence suggested the allowable opening should have been one-fourth inch. The evidence showed the guard merely reduced the opening from eight to six inches and was actually worse than no guard at all because it gave the operator a false sense of security.

It was also shown plaintiff should have been trained in the safe operation of the key punch. The training program should have consisted of a set of written instructions on the safe operation of the machine. Additionally a supervisor should have trained plaintiff in the operation and observed him during his early actual performance of the operation.

Richard C. Turner, Atty. Gen., and Larry M. Blumberg, Asst. Atty. Gen., for appellant.

Thomas J. Reilly and Harlan Lemon, Des Moines, for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

This action arose under the State Tort Claims Act, chapter 25A, The Code. Coy W. McBroom, Jr. (plaintiff) was injured when his left hand was caught in the die of a punch press he was operating while an inmate of the Iowa Mens Reformatory at Anamosa. As a result of the injury plaintiff's hand was amputated.

Pursuant to § 25A.3, The Code, plaintiff filed a claim with the State appeal board. When action was not taken on the claim by the board within six months this action was filed in Polk County district court pursuant to § 25A.4. The trial court, sitting as required without a jury, heard the matter in an extensive trial. In its decision the trial court found the State was negligent in two respects. The key punch was not equipped

Plaintiff was given no written instructions. No supervisor observed his early operation. The only oral directions on operation came from a fellow inmate who also used the machine. The fellow inmate directed plaintiff on how to start and stop it, how to feed rolls of aluminum into it, and where license plates came out. The fellow inmate also directed plaintiff on how to put metal under a pedal of the machine so it would continue to run when unattended and what to do when the machine jammed. Plaintiff testified:

"If the aluminum jammed up in the machine * * * we had * * * a steel hook, and [were] instructed to hook that aluminum and jerk it out of the dies or out of the machine and the dies and cut the aluminum and rethread it. We just reached in the machine and hooked it and pulled it out."

On the morning of the accident the machine had not performed normally. The aluminum jammed in the dies. The shop foreman observed plaintiff unjamming the machine with the hook and expressed no disapproval. Sometime between 7:30 and 8:00 a. m., when ,the machine again jammed, plaintiff shut it down to the extent of stopping the press. He reached in with the hook as he had been directed, intending to hook and remove the aluminum from the machine. While his hand was inside, the machine started to move. When plaintiff started to remove his arm the machine caught him in some unknown way. As a result plaintiff's hand was subsequently amputated.

In addition to finding the State negligent the trial court found such negligence was the proximate cause of plaintiff's injuries and found plaintiff was not contributorily negligent. The trial court fixed the amount of plaintiff's damages at $125,000. Other facts can be more appropriately detailed as they relate to specific assignments.

On appeal the State's various assignments challenge trial court rulings in regard to discovery, the admission and consideration of evidence of the effects of plaintiff's prison status in connection with damages, the amount of damages allowed and rulings on post-trial motions. The State does not contend inmates of state institutions are not protected by the State Tort Claims Act. See § 25A.2(3), The Code; 60 Am.Jur.2d, Penal and Correctional Institutions, § 19, page 824. Neither does the State contend on appeal there was insufficient evidence to support the trial court's finding of negligence.

I. The State's difficulty in seeking discovery resulted not from reluctance on the part of the trial court to provide for it, but from the time and manner in which it was sought. The State chose not to seek discovery by way of taking oral depositions but elected rather to propound written interrogatories under rule 121, Rules of Civil Procedure. The discovery was undertaken and rulings on State's objections were entered prior to the effective date of present rule 134, R.C.P., (Failure to make discovery: consequences) which became effective July 1, 1973.

The petition was filed in district court on March 5, 1971 and issues were finally joined on April 12, 1971. The cause remained untried for more than two years during which time no discovery was undertaken. The State's first interrogatories were not filed until May 8, 1973, the same day the case was assigned for trial. Trial was set for June 18, 1973. Plaintiff at first objected to interrogatories but withdrew the objections and filed answers.

The State considered the answers unsatisfactory on the claim they were vague and evasive. For example State's interrogatory No. 7 asked "State in detail the facts concerning the accident." Plaintiff answered "While performing his work assignment pursuant to instructions, Plaintiff suffered traumatic injury when cutting press was activated and/or engaged in a manner unknown to Plaintiff."

The State continued its efforts to compel answers it considered unsatisfactory and moved for continuance. The trial court in part sustained the motion to compel further answers but overruled the motion to continue. The trial court offered to direct the taking of plaintiff's oral deposition but the offer was not accepted. The State was still unsatisfied with the answers at the time of trial. The trial court specifically determined the interrogatories were sufficiently answered before plaintiff began to offer evidence.

Prior to its amendment on July 1, 1973 rule 134 did not contain a provision addressed to evasive or incomplete answers. The rule was commonly considered to be the same as rule 37 of the Federal Civil Rules, after which it was modeled. See Vestal, 43 Iowa L.Rev. at page 30. A line of federal cases pointed out the difficulty encountered by a trial court in attempting to deal with incomplete, evasive or false

answers. See Southard v. Pennsylvania Railroad Company, D.C.E.D.Pa.1959, 24 F.R.D. 456; Cardox Corporation v. Olan Mathieson Chemical Corp., S.D.Ill.1958, 23 F.R.D. 27; Cozier v. American Airlines, Inc., S.D.N.Y.1960, 25 F.R.D. 268.

We find no reversible error in the trial court's finding the answers sufficient, especially in view of its expressed willingness to direct the taking of plaintiff's oral deposition.

II. The State objected vigorously to the admission of evidence intended to show plaintiff's status as a prisoner and especially the effect of his injury on one so situated. Plaintiff's own testimony and testimony of two expert witnesses detailed the special psychological problems faced by prisoners and former prisoners. Evidence was offered to show the psychological problems of one who has suffered a traumatic loss of a hand. Plaintiff then offered evidence to show the special effect such a loss would have upon prisoners and former prisoners.

Admission and consideration of this evidence was resisted by the State which seeks to argue it should not be required to compensate for mental pain and anguish which attends a prisoner or former prisoner status. Plaintiff refuses to join in such an argument. It is plaintiff's view the State is not being called upon to compensate for mental pain and anguish attending plaintiff's prisoner status. Plaintiff insists the challenged evidence was received and considered only to show the extent the State's wrongful act proximately and naturally aggravated plaintiff's highly susceptible psychological condition.

The trial court was justified in finding plaintiff's evidence was impressive. Plaintiff called Dr. Steven Fox, professor in the department of psychology at the University of Iowa. Dr. Fox's extensive educational credentials and high professional standing are unquestioned.

According to Dr. Fox, prisoner experience has profound psychological effects. He described the experience as "depersonalizing" and "dehumanizing." As a result a prisoner or former prisoner sees himself as lower class, uncertain, filled with guilt, rejected and frustrated. Dr. Fox also testified one suffering a limb loss faces many of the same difficulties in his readjustment. He further related a multiplication of difficulties, not a mere addition of difficulties, is the result when prisoner or former prisoner status is coupled together with loss of limb status. He summed up his extensive testimony as follows:

"Being in prison for any period of time totally dehumanizes and devalues a person, his personal self-worth is substantially reduced. So that in combination with the other major thing, with his major disability loss of limb and amputation, all the literature points to these two things as being really serious. The combination is, I would say, a unique clinical entity which would mean that this person is going to face very major serious adjustment problems in every imaginable direction. Denying therapy would in my opinion be a disservice to the whole concept of rehabilitation. I would say that minimally it would be mental suffering. This is serious anguish. And it is reproduced and reproduced and reproduced. * * *."

Dr. Fox recommended extensive therapy which he thought might reasonably be required for five years. Dr. Fox's views were corroborated by another witness called by plaintiff.

John H. Hagge, Sr. is a physician and psychologist who also holds a law degree. At time of trial he had 27 years of clinical experience in the area of psychology and psychiatry. He believed plaintiff would need psychotherapy for a minimum of three years.

Plaintiff's argument favoring admission and consideration of the challenged evidence proceeds from a familiar principle of tort damages. A tort-feasor takes the person he injures as he finds him. A duty

of care inures to the benefit of the sick and infirm the same as to the healthy and strong. Such an injured person is entitled to such increased damages as are the natural and proximate result of the wrongful act. Restatement, Second, Torts, § 461, page 281; Stern, Damages and Recovery (1972), §§ 107–109, pages 185–191; 2 Harper and James, The Law of Torts, § 25.1, pages 1299–1303.

Our cases are in accord. Waterloo Sav. Bk. v. Waterloo, C.F. & N.R., 244 Iowa 1364, 60 N.W.2d 572 and authorities. See also 25 C.J.S. Damages § 21, pages 658–661; 22 Am.Jur.2d, Damages, §§ 123 and 124, pages 175–179.

The principle applies where the injury complained of is a mental or neurological condition. Stern, Damages and Recovery, supra, § 117, pages 200–202. See Annot., 2 A.L.R.3d 487. It has long been held the principle applies notwithstanding a contention the pre-existing conditions may have resulted from plaintiff's own conduct. Sullivan v. Minneapolis, St. P. & S. S. M. Ry. Co., 55 N.D. 353, 213 N.W. 841.

The trial court reserved rulings on various State objections to evidence describing anguish for which compensation is not allowable under the foregoing principles. At one point the trial court explained:

" * * * I might inform you, Mr. Lemon, [plaintiff's counsel] that I agree with his [State's counsel] statement. But I will receive your testimony subject to the objection. I would suggest that you prepare a legal brief, because my understanding is the pain and suffering, mental anguish, must be directly attributable to the injury and * * * [the evidence must show] a reasonable medical certainty that this type of * * * anguish resulted from the injury, and the collateral issues of return to the penitentiary because of his parole violation and family discord, unless they are directly attributable to the injury, are not admissible. But I will receive it subject to the objection."

Similar evidence was also taken "subject to the objection." We believe it clear the court allowed presentation of the evidence by way of offer of proof. Counsel for the State, while objecting to the evidence itself, did not object to the procedure. On motion made after trial the trial court made specific rulings on all such objections. We believe it clear from the trial court's ruling the only evidence on the subject of plaintiff's mental condition received or considered was in accordance with the principles previously outlined. The State's second assignment is without merit.

III. The State separately assigns a claim the award was excessive. It is not claimed the amount was too large but it is argued it was based in part on evidence the State challenged. The State argues in its brief and argument:

" * * * The damages are excessive not because $125,000 is too much for the loss of a hand, but rather because the plaintiff failed to sustain his burden of proof, and testimony as to damages was improperly admitted over defendant's objections. In continuation of the above discussion, an award for mental anguish and/or therapy would be excessive because it was based upon improperly admitted evidence."

This assignment proceeds from the one discussed in the preceding division and our holding there is dispositive. Since we found the verdict was not based in part on improper evidence it cannot be said to be excessive for that reason.

IV. The same is true with regard to another assignment of error. Believing the challenged evidence was improperly received and considered the State filed a post-trial motion under rule 179(b) R.C.P. The motion asked the trial court to enlarge its findings to separately fix and determine the amounts allowed as compensation for the various elements of plaintiff's damages. The motion might well have been sustained. Stanley v. State, 197 N.W.2d 599, 606 (Iowa 1972). If the State had prevailed in its

challenge to a part of the damage award, an enlargement of the findings might well have avoided the necessity of retrial. But since the State has not so prevailed the failure of the trial court to enlarge is harmless.

■ V. The State contends the trial court erred in awarding damages for loss of earnings when such a loss was not sufficiently pleaded as a separate element. This contention was not made when the evidence was offered nor at any time during the trial. It was not included in the State's motion for a new trial. The assignment cannot be raised for the first time on appeal. Schnabel v. Display Sign Service, Inc., 219 N.W.2d 546 (Iowa 1974) and citations.

VI. There remains the State's contention evidence was improperly received at hearing on the State's post-trial motion. Plaintiff called three prominent attorneys with wide experience in the trial of personal injury cases. Over the State's objections these attorneys were allowed to testify that in their expert and professional judgment the award was not excessive. The State contends the evidence should not have been received and we agree.

■ The responsibility imposed upon a trial court to rule on motions for new trial under rule 244, R.C.P., is that of the trial court alone. Where possible it is preferably that of the judge who actually presided at trial. Dubuque Area Chamber of Commerce v. Adams, 225 N.W.2d 147 (Iowa 1975). We do not believe it to be good practice to call trial lawyers, no matter how distinguished their qualifications, to testify as to the appropriateness of an award. Such evidence is generally not admissible before the trier of facts in the trial of personal injury cases. See 22 Am.Jur.2d, Damages, § 333, page 436. We see even less reason for admitting such evidence on hearing for a new trial.

■ However it is to be noted this evidence was received upon the question of excessiveness of the award. As previously explained the State does not claim the award was excessive, except in that it included elements the State unsuccessfully urged should not have been compensatory. The State was therefore in no way harmed by the reception of the evidence. We do not find the award excessive. See generally Annot., 11 A.L.R.3d 9, 179.

Other contentions urged by the State, most of which are restatements and accumulations of those previously discussed, have been considered and are found to be without merit.

Affirmed.