IN THE SUPREME COURT OF IOWA

 No. 10 / 03-1807

 Filed January 13, 2006

RICHARD C. SUMMY and CHRISTINE M. SUMMY,

 Appellees,

vs.

CITY OF DES MOINES, IOWA,

 Appellant.

 Appeal from the Iowa District Court for Polk County, Carla T.
Schemmel, Judge.

 City appeals from adverse judgment in personal injury action.
AFFIRMED.

 Mark Godwin, Deputy City Attorney, Des Moines, for appellant.

 Edward M. (Ted) Spellman and Martin E. Spellman of Spellman, Spellman,
Spellman, Spellman, Kealhofer & Spellman, Perry, for appellees.

TERNUS, Justice.
 The appellee, Richard C. Summy, was seriously injured during a golf
outing when he was struck by a golf ball hit by another player. Summy
successfully sued the owner of the golf course, appellant City of Des
Moines. The City has appealed, alleging several grounds for reversal: (1)
the district court erred when it eliminated all Des Moines property owners
from the trial jury; (2) the court erred in submitting the case under the
theory the City failed to protect an invitee from the harmful act of a
third person rather than under the theory the plaintiff was harmed by a
condition on the premises; (3) the court abused its discretion in refusing
to instruct the jury on sole proximate cause or to allow the defendant to
discuss this concept in opening statement; and (4) the court erred in
failing to direct a verdict on the grounds the City was immune from
liability and the City owed the plaintiff no individual duty to protect him
from the ordinary risks inherent in the game of golf. Upon our review of
the record and consideration of the arguments of the parties, we affirm.
 I. Background Facts and Proceedings.
 On June 5, 2000, Summy was playing golf at the City-owned Waveland
Golf Course when he was struck in the eye with a golf ball. Summy was on
the eighteenth fairway at the time. The ball was hit from the tee on the
first hole by another golfer, Richard Thomas. Summy sued the City,[1]
alleging it

 had designed, operated, and maintained the Waveland Golf Course in an
 unreasonably dangerous condition in that a golfer engaging in golfing
 activities on the 18th golf hole was at unreasonable risk of being
 struck by a golf ball struck by a golfer from the tee box of the first
 hole of the golf course.

The plaintiff alleged a number of specific ways in which the City was
negligent. The City answered, raising several affirmative defenses,
including comparative fault, sole proximate cause, and immunity under Iowa
Code chapter 670 (1999).
 Subsequently, the City filed a motion for summary judgment on the
basis of the immunity granted in section 670.4(10) for liability based on
the “issuance of a permit, inspection, investigation, or otherwise . . . if
the damage is caused by a third party.” Iowa Code § 670.4(10). The City
also asserted that it owed Summy no duty to protect him from the “ordinary
and ever present risks of the sport of golf.” Relying on the duty imposed
on possessors of land by Restatement (Second) of Torts section 344 (1965),
the district court rejected the City’s argument that it owed no duty to the
plaintiff. The court also concluded the statutory immunity asserted by the
City was not applicable.
 Prior to trial, the plaintiff filed a motion to limit prospective
jurors to nonresidents of the City of Des Moines in view of his severe
injury and the potential for a high verdict against the City. Although the
court denied the plaintiff’s request to remove all residents of the City
from the jury panel, the court ruled that property owners in the City would
be excused from the panel. Immediately before trial, the City challenged
the jury panel, arguing the removal of “all jurors who were property owners
in the City of Des Moines” was “a material departure from the statutory
requirements for drawing or returning a jury.” This challenge was rejected
by the trial court.
 The plaintiff also filed a motion in limine before trial asking the
court to prohibit the defendant from mentioning or arguing that the actions
or failure to act of the other golfer—Thomas—constituted a proximate cause
of the plaintiff’s injuries. The court agreed that the other golfer’s
negligence was not at issue, noting that Thomas was not a party to the
lawsuit and sole proximate cause would not be an issue in the case.
 At trial Summy introduced evidence that the design of the golf course
called for a tree barrier between the first and eighteenth fairways.
Although such a barrier had existed at one time, sixty to eighty mature
trees in the area between these fairways died in the 1960s. In June 2000,
there were a few small trees between the first and eighteenth fairways, but
according to the plaintiff’s witnesses these trees were not a sufficient
protective barrier. Even one of the City’s witnesses acknowledged there
was a hazard in the area of fairway eighteen from being hit by a shot off
tee number one. Summy’s experts testified that the two fairways had
overlapping areas of play and that it was absolutely foreseeable that golf
balls hit from the first tee would travel into the area where Summy was hit
due to the overlapping playing areas and the lack of heavy trees between
the fairways. The experts also identified several ways in which the safety
in this area could have been improved. In addition, evidence was presented
that the City had no inspection or safety program, and no one was
responsible for identifying hazards on the course so protective measures
could be implemented.
 The record also contains evidence in support of the City’s
comparative fault defense. At the time Summy was hit by the golf ball, he
was twenty feet from the rough in between the eighteenth and first fairways
and approximately 150 yards from the white tee box of the number one hole.
Summy testified that he saw individuals warming up on the number one tee,
but he focused his attention on his golfing partner even though he was
aware that a golfer could get hit by balls shot from adjacent fairways.
Summy admitted that had he looked toward the number one tee when Thomas was
teeing off, he could have seen Thomas swinging his club, as nothing would
have blocked Summy’s view. On the other hand, Summy believed that if
Thomas had yelled “fore,” there was a possibility that Summy would have had
time to react and prevent the injury. Thomas testified that he did not
yell “fore” when his shot veered into the eighteenth fairway because he had
not noticed anyone in that location.
 The City made motions for directed verdict at the proper times,
raising the same arguments made in its motion for summary judgment. The
trial court refused to grant a directed verdict to the defendant.
 The jury found both Summy and the City at fault. Summy was held
twenty-five percent at fault, and the City was found seventy-five percent
at fault. The trial court entered judgment for the damages found by the
jury, reduced by the plaintiff’s fault, and the City appealed.
 II. Jury Selection.
 A. Issue. The City renews its challenge to the trial jury on
appeal. The defendant claims the trial court ignored two statutory edicts
and a rule of civil procedure when it excused Des Moines property owners
from the jury panel. See Iowa Code § 607A.3(7) (defining “panel” as “those
jurors drawn or assigned for service to a courtroom, judge, or trial”).
The City relies on Iowa Code section 624.11A, which specifies the
circumstances under which a juror may be challenged based on the juror’s
taxpayer status, and on Iowa Code section 607A.2, which prohibits the
exclusion of persons from jury service based on the person’s “age if the
person is eighteen years of age or older, race, creed, color, sex, national
origin, religion, economic status, physical disability, or occupation.”
(Emphasis added.) Finally, the defendant argues Iowa Rule of Civil
Procedure 1.915(6) sets forth the reasons that a party may challenge a
potential juror for cause and none of those reasons include potential bias
or prejudice.

 B. Error preservation. Because the plaintiff insists the defendant
did not preserve error on its challenge to the court’s action in striking
property owners from the jury panel, our analysis begins with rule
1.915(4), which states:

 Before any juror is sworn, either party may challenge the panel, in
 writing, distinctly specifying the grounds, which can be founded only
 on a material departure from the statutory requirements for drawing or
 returning the jury.

Iowa R. Civ. P. 1.915(4). The plaintiff claims the defendant failed to
comply with this rule in two particulars: (1) the City’s written objection
was not filed until after the jury had been selected, although an oral
objection had been made immediately before trial; and (2) the City’s motion
did not identify the two statutes that the City now claims prohibited the
exclusion of Des Moines property owners from the jury panel.
 We think rule 1.915(4) does not apply to the City’s objections. That
rule states a challenge to the panel “can be founded only on a material
departure from the requirements for drawing or returning the jury.” Iowa
R. Civ. P. 1.915(4) (emphasis added). The term “drawing” refers to the
procedure incident to the “actual drawing of names of eligible jurors”
from, for example, a jury wheel, and the term “returning” refers to the
procedure followed to summon into court the jurors drawn. See People v.
Hetenyi, 235 N.Y.S.2d 164, 166 (Monroe County Ct. 1949) (interpreting
similar New York rule). See generally Iowa Code ch. 607A (outlining
procedures for drawing and returning a jury). The City has not claimed
noncompliance with the procedural requirements set forth in chapter 607A
for drawing and returning the jury. Cf. State v. Morgan, 559 N.W.2d 603,
610 (Iowa 1997) (defendant contended the method by which the jury list was
compiled failed to follow the “random selection” requirement of section
607A.10); State v. Lohr, 266 N.W.2d 1, 2 (Iowa 1978) (defendant claimed
noncompliance with statutorily prescribed procedure for drawing of list
from which defendant’s trial jury was ultimately chosen). Rather, the
defendant’s challenge is to the method of selecting the trial jury, namely,
granting the plaintiff’s challenge for cause to all city property owners.
Consequently, the special requirement of a writing distinctly specifying
the grounds for an objection to the drawing and returning of the jury panel
does not apply.
 The City’s objection was clearly sufficient under our regular error
preservation rules, which require a party to alert the district court “to
an issue at a time when corrective action can be taken.” Top of Iowa Co-
op. v. Sime Farms, Inc., 608 N.W.2d 454, 470 (Iowa 2000). Immediately
prior to trial, the defendant objected to the court’s exclusion of Des
Moines property owners from the jury panel. This objection was sufficient
to alert the court to the error that the defendant now raises on appeal at
a time when the court could have corrected its prior ruling. Certainly it
would have been helpful to the trial court had the City provided that court
with the same legal authorities in support of its position that it has
brought to the attention of this court on appeal. Error preservation does
not turn, however, on the thoroughness of counsel’s research and briefing
so long as the nature of the error has been timely brought to the attention
of the district court.
 C. Merits. Having determined that error was preserved, we now
consider whether the trial court erred in excusing all Des Moines property
owners from the jury panel. We conclude it did.
 Prior to 1984, this court had routinely held that “when an action in
tort is brought against a municipality . . . [the] plaintiff may . . .
effectively challenge any members of the jury panel who are taxpayers in
the defendant municipality.” Beyer v. City of Dubuque, 258 Iowa 476, 486,
139 N.W.2d 428, 435 (1966); accord Lang v. City of Des Moines, 294 N.W.2d
557, 564 (Iowa 1980) (declining “to retreat from past approval of the
exclusion of property taxpayers from juries deciding civil actions in which
their cities are named defendants”); Alber v. City of Dubuque, 251 Iowa
354, 363, 101 N.W.2d 185, 190 (1960) (“Throughout the history of the state
it has been customary that where a claim for damages is made against a
city, property owners in the city are disqualified as jurors.”). But in
1984 the Iowa legislature enacted Iowa Code section 624.11A, which reads:

 When selecting a jury in a trial in which a municipality is a
 defendant, a juror challenge based on the potential juror’s status as
 a taxpayer of that municipality shall not be allowed unless a real,
 substantial, and immediate interest is shown which would unfairly
 prejudice the plaintiff.

Iowa Code § 624.11A (emphasis added).
 The plaintiff argues this provision merely codified the longstanding
body of Iowa case law that allowed a challenge to a juror based upon
taxpayer status. He claims he made the required showing of a “real,
substantial, and immediate interest . . . which would unfairly prejudice
the plaintiff” due to the severe nature of his injury—the loss of his eye.
Summy contends that because a significant verdict was likely and because
such a verdict would result in substantially higher taxes, all Des Moines
property owners would have a personal interest adverse to the plaintiff.
The City responds that the point of the statute was to require a
demonstration of bias on the part of each juror sought to be excluded. We
agree. The legislature, rather than codifying existing case law, rejected
that law by clearly stating that such challenges were not permitted, unless
certain requirements were met.
 In this case, the court failed to follow section 624.11A because it
did not require the plaintiff to show a real, substantial, and immediate
interest of the rejected jurors,[2] but rather excused all city property
owners from the trial jury based simply on their status as taxpayers. This
error in applying section 624.11A was an abuse of discretion. See Graber
v. City of Ankeny, 616 N.W.2d 633, 638 (Iowa 2000) (“An abuse of discretion
occurs when ‘the court exercise[s] [its] discretion on grounds or for
reasons clearly untenable or to an extent clearly unreasonable.’ A ground
or reason is untenable when it is not supported by substantial evidence or
when it is based on an erroneous application of the law.” (Citation
omitted.)). We now turn to the question of prejudice.[3]
 D. Prejudice. Prejudice from the erroneous exclusion of a juror
will not be presumed. See Alber, 251 Iowa at 363, 101 N.W.2d at 190
(refusing to reverse based on trial court’s disqualification of property
owners from jury based, in part, on objecting party’s failure to show
prejudice); cf. State v. Hartsfield, 681 N.W.2d 626, 633 (Iowa 2004)
(“Instructional error is not reversible error unless there is prejudice.”);
Bauer v. Cole, 467 N.W.2d 221, 225 (Iowa 1991) (stating erroneous
evidentiary ruling “is not reversible error in the absence of prejudice”).
Rather, a party claiming prejudice must establish that the resulting jury
was not impartial and competent.[4] See Johnson v. City of Waterloo, 140
Iowa 670, 672, 119 N.W. 70, 71 (1909); accord 47 Am. Jur. 2d Jury § 185, at
868-69 (1995). As this court explained in Johnson,

 The defendant had no right to a trial before any particular juror or
 jury. All it could insist upon was a competent and impartial jury,
 and, as the record does not affirmatively show that it exhausted the
 peremptory challenges to which it was entitled, the jurors before whom
 the cause was tried are presumed to have been acceptable to it. The
 erroneous overruling of a challenge for cause may result in the
 retention of an objectionable juror. But this will, rarely, if ever,
 happen because of the rejection of a competent juror. . . . In
 states, where, as in this, the right to trial before any particular
 juror or jury is denied, the ruling by which a juror is excused
 without good cause is not reviewable on appeal, unless it also is made
 to appear from the record that this has resulted in the trial of
 issues before a partial or incompetent jury. The theory of these
 decisions is that, though a qualified juror be excused, another
 equally competent and fair minded will be selected in his stead, and,
 if a competent and impartial jury is finally secured before whom the
 cause is tried, neither party is in a situation to complain.

140 Iowa at 671-72, 119 N.W. at 71 (citations omitted). This court
concluded in Johnson that the trial court’s erroneous exclusion of resident
taxpayers from the jury panel did not result in prejudice because there was
no showing the resulting jury was not impartial. Id.
 The same result is warranted here. The City has not demonstrated,
nor even claimed, that the trial court’s error forced the City to leave an
objectionable juror on the jury. In the absence of such a showing, we
cannot find prejudice. Therefore, the trial court’s exclusion of Des
Moines property owners from the jury, while an abuse of discretion, did not
result in reversible error.
 III. Jury Instructions on Liability Theory.
 The defendant objected to the court’s instruction based on section
344 of the Restatement (Second) of Torts, concerning liability for a
failure to prevent harm caused by a third party. The City contended the
jury should have been instructed on the premises liability theory contained
in the Iowa State Bar Association’s Civil Jury Instructions Nos. 900.1 and
900.5, which are based on Restatement (Second) of Torts sections 343 and
343A. These latter Restatement provisions address liability for harm
caused by conditions on the land. The City’s argument is essentially that
the plaintiff pled and sought to prove a section 343 or section 343A case
because he and his experts criticized the condition of the golf course, yet
the court instructed under a theory the defendant had failed to protect the
plaintiff from the wrongful conduct of a third party.
 We review a claim that the court gave an instruction that was not
supported by the evidence for correction of errors of law. See State v.
Piper, 663 N.W.2d 894, 914 (Iowa 2003). We review the related claim that
the trial court should have given the defendant’s requested instructions
for an abuse of discretion. See Anderson v. State, 692 N.W.2d 360, 363
(Iowa 2005). “Under Iowa law, a court is required to give a requested
instruction when it states a correct rule of law having application to the
facts of the case and when the concept is not otherwise embodied in other
instructions.” Herbst v. State, 616 N.W.2d 582, 585 (Iowa 2000) (emphasis
added).
 For the reasons that follow, we think the court correctly instructed
the jury on the duty set forth in section 344. As we also explain,
sections 343 and 343A have no application to the facts of this case, so the
court did not abuse its discretion in refusing to instruct on those
theories.
 Section 344 of the Restatement provides:

 A possessor of land who holds it open to the public for entry for his
 business purposes is subject to liability to members of the public
 while they are upon the land for such a purpose, for physical harm
 caused by the accidental, negligent, or intentionally harmful acts of
 third persons or animals, and by the failure of the possessor to
 exercise reasonable care to
 (a) discover that such acts are being done or are likely to be
 done, or
 (b) give a warning adequate to enable the visitors to avoid the
 harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (emphasis added). In contrast, section
343 concerns the liability of a possessor of land “for physical harm caused
to his invitees by a condition on the land” if the possessor

 (a) knows or by the exercise of reasonable care would discover
 the condition, and should realize that it involves an unreasonable
 risk of harm to such invitees, and
 (b) should expect that they will not discover or realize the
 danger, or will fail to protect themselves against it, and
 (c) fails to exercise reasonable care to protect them against
 the danger.

Restatement (Second) of Torts § 343 (emphasis added). Section 343A sets
forth specific rules governing “physical harm caused to [invitees] by any
activity or condition on the land whose danger is known or obvious to
them.” Restatement (Second) of Torts § 343A. As the wording of these
provisions indicates, section 344 generally applies to injuries caused by
third parties, whereas section 343 governs injuries caused by a condition
on the land, and section 343A governs injuries caused by an activity or
condition on the land. See Young v. Gregg, 480 N.W.2d 75, 78-79 (Iowa
1992) (distinguishing Restatement premises liability theories based on
direct cause of injury); see also Morgan v. Perlowski, 508 N.W.2d 724, 727
(Iowa 1993) (refusing to apply principles governing liability of possessor
of land for harm caused by conditions or activities on the land in case
involving landowner’s failure to protect guest from harm by another guest).

 A review of the record shows the gist of the plaintiff’s claim
against the defendant was that the City, as owner and operator of the golf
course, had a duty to its business invitee, Summy, to exercise reasonable
care to protect Summy from physical harm caused by other golfers. The
plaintiff introduced evidence that the defendant failed to exercise
reasonable care because there were several ways in which golfers could have
been protected from other golfers’ errant shots by making changes in the
golf course in the area of the first and eighteenth fairways. The
plaintiff never claimed that he was injured by a condition on the land,
only that the condition of the land was such that it did not protect
against injuries caused by third parties.
 We think this evidence supports the instruction given by the court
since the cause of the plaintiff’s injury was the conduct of a third
person, against which the plaintiff claimed the defendant could have
protected him. The fact that some of the protective steps that could have
been taken by the City involved changes to the condition of the premises
did not make this a section 343 or section 343A case. All three
Restatement provisions address the liability of the possessor of land, so
it is not surprising that the conduct of the defendant with respect to its
management and care of the premises would be relevant to each of these
theories. We conclude, therefore, that the trial court did not err in
submitting this case on the theory set forth in section 344, and likewise
did not abuse its discretion in refusing to instruct under sections 343 and
343A.
 IV. Sole Proximate Cause.
 The defendant asserts the trial court abused its discretion (1) in
refusing to allow the City to inform the jury in its opening statement that
Thomas was the sole proximate cause of the plaintiff’s injury, and (2) in
refusing to give an instruction on sole proximate cause. We think the
trial court correctly concluded that this concept was not applicable in
this case.
 “Sole proximate cause means the only proximate cause.” Johnson v.
Interstate Power Co., 481 N.W.2d 310, 323 (Iowa 1992). It “rests on the
notion that some third party or other independent event was the sole cause
of the plaintiff’s injuries.” Baker v. City of Ottumwa, 560 N.W.2d 578,
583 (Iowa 1997) (emphasis added); accord Sponsler v. Clarke Elec. Coop.,
Inc., 329 N.W.2d 663, 665 (Iowa 1983) (stating sole proximate cause
“introduces an issue of a third party’s conduct or a separate event into
the case”); Seide v. State, 875 A.2d 1259, 1270 (R.I. 2005) (“ ‘Intervening
cause exists when an independent and unforeseeable intervening or secondary
act of negligence occurs, after the alleged tortfeasor’s negligence, and
that secondary act becomes the sole proximate cause of the plaintiff’s
injuries.’ ” (Emphasis added and citation omitted.)). In this sense, it
is used as an alternative label for superseding cause.[5] See State v.
Marti, 290 N.W.2d 570, 585 (Iowa 1980) (stating a finding that an act is an
intervening, superseding cause is, in effect, a finding that the act was
the sole proximate cause); see also Restatement (Third) of Torts: Liability
for Physical Harm § 34 cmt. f (Proposed Final Draft No. 1 2005) (noting
“[t]he most common usage of sole proximate cause is as an alternative to
superseding cause”). Under the circumstances of this case, the alleged
sole proximate cause—Thomas’s negligent act[6]—is also an intervening cause
because it is an event that occurred after the defendant’s negligence to
actively produce the harm to the plaintiff. See Estate of Long ex rel.
Smith v. Broadlawns Med. Ctr., 656 N.W.2d 71, 84 (Iowa 2002); see also
Weyerhaeuser Co. v. Thermogas Co., 620 N.W.2d 819, 830 (Iowa 2000) (“ ‘
“Intervening” is used in a time sense; it refers to later events.’ ”
(Citation omitted.)).
 Whether this intervening cause could be a superseding or sole
proximate cause of Summy’s injuries is answered by the following principle
of law from the Restatement (Second) of Torts:

 If the likelihood that a third person may act in a particular manner
 is the hazard or one of the hazards which makes the actor negligent,
 such an act whether innocent, negligent, intentionally tortious, or
 criminal does not prevent the actor from being liable for harm caused
 thereby.

Restatement (Second) of Torts § 449; see also Weyerhaeuser Co., 620 N.W.2d
at 830 (holding foreseeable intervening force is within scope of
defendant’s negligence and will not relieve defendant of liability); Rieger
v. Jacque, 584 N.W.2d 247, 251-52 (Iowa 1998) (same). Under this rule, the
concept of sole proximate cause is incompatible with a theory of liability
based on Restatement (Second) of Torts section 344 when the third party who
inflicted the harm is alleged to be the sole proximate cause of the
plaintiff’s injury. That is because section 344 liability is based on the
defendant’s failure to protect the plaintiff from the harm caused by the
third party, whether the third party was negligent or not. A comment to
the Restatement explains:

 The happening of the very event the likelihood of which makes the
 actor’s conduct negligent and so subjects the actor to liability
 cannot relieve him from liability. The duty to refrain from the act
 committed or to do the act omitted is imposed to protect the other
 from this very danger. To deny recovery because the other’s exposure
 to the very risk from which it was the purpose of the duty to protect
 him resulted in harm to him, would be to deprive the other of all
 protection and to make the duty a nullity.

Restatement (Second) of Torts § 449 cmt. b. A section 344 case falls
squarely within the rule stated in section 449, as that rule is explained
in this comment.
 Turning then to the present case, we note that Thomas’s negligence is
one of the hazards against which the City had a duty to use reasonable care
to protect the plaintiff. Therefore, Thomas’s act does not prevent the
City from being liable for the resulting harm. See Restatement (Second) of
Torts § 449 & cmt. b. Accordingly, Thomas’s intervening act cannot, as a
matter of law, be the sole proximate cause of the plaintiff’s injury. See
Estate of Long, 656 N.W.2d at 85 (affirming trial court’s refusal to
instruct on sole proximate cause in case submitted under Restatement
(Second) of Torts section 323 (liability based on failure to render service
necessary for the protection of another) because the intervening force fell
“ ‘squarely within the scope of the original risk’ ” (citation omitted));
see also Ontario Sewing Mach. Co. v. Smith, 572 S.E.2d 533, 536 (Ga. 2002)
(“[F]or an intervening act of a third party to become the sole proximate
cause of a plaintiff’s injuries, the intervening act must not have been
‘foreseeable by defendant . . . .’ ”); Contois v. Town of West Warwick, 865
A.2d 1019, 1027 (R.I. 2004) (same).
 For this reason, the trial court did not abuse its discretion by
refusing to instruct the jury on the defendant’s sole-proximate-cause
defense. See Herbst, 616 N.W.2d at 585 (stating court must give requested
instruction only “when it states a correct rule of law having application
to the facts of the case” (emphasis added)). Likewise, the court did not
abuse its discretion in prohibiting the City from stating in its opening
statement that Thomas’s negligence was the sole cause of the plaintiff’s
injuries. See State v. Miller, 359 N.W.2d 508, 510 (Iowa Ct. App. 1984)
(stating scope and extent of opening statement rests within discretion of
trial court).
 V. Directed Verdict.
 The City requested a directed verdict on several grounds, two of
which it asserts on appeal were sufficient to warrant a verdict in its
favor as a matter of law. We review a trial court’s ruling on a motion for
directed verdict for the correction of errors of law. Bellville v. Farm
Bureau Mut. Ins. Co., 702 N.W.2d 468, 473 (Iowa 2005).
 A. Immunity. The defendant moved for a directed verdict on the
basis it was immune pursuant to Iowa Code section 670.4(10), which provides
for the immunity of a municipality on any claim

 based upon an act or omission of an officer or employee of the
 municipality, whether by issuance of permit, inspection,
 investigation, or otherwise, and whether the statute, ordinance, or
 regulation is valid, if the damage was caused by a third party, event,
 or property not under the supervision or control of the municipality,
 unless the act or omission of the officer or employee constitutes
 actual malice or a criminal offense.

Iowa Code § 670.4(10). On the day in question, Thomas was playing on a
pass issued to his employer. The City argues the pass is akin to a license
or permit and thus within the contemplation of section 670.4(10). Because
Thomas was not under the supervision or control of the defendant, the City
reasons it is immune under subsection (10) from a claim for damages caused
by Thomas.
 This court has previously interpreted section 670.4(10) to grant
immunity only when the claim against the municipality is based on the
issuance of a permit, an inspection, an investigation, or similar municipal
action. Messerschmidt v. City of Sioux City, 654 N.W.2d 879, 884 (Iowa
2002). Even if we accept the City’s argument that its action in issuing a
golfing pass to Thomas’s employer is similar to the issuance of a permit,
we do not think the plaintiff’s claim against the City was based on this
action by the defendant. The plaintiff’s claim does not rest on any
negligence by the City in letting Thomas play golf on city property that
day. The plaintiff’s claim is premised on the City’s failure to protect
the plaintiff from the foreseeable hazard of an errant golf shot. This
claimed negligence by the City is not remotely similar to the municipal
actions encompassed in section 670.4(10). Consequently, the immunity
granted in that section does not apply, and the trial court correctly
refused to grant a directed verdict on the basis of statutory immunity.
 B. Duty. The defendant also based its motion for directed verdict
on the assertion it had no duty to Summy to protect him from the ordinary
risks inherent in the game of golf. While section 344 does not make the
owner or operator of a golf course an insurer of players’ safety, it does
require that the possessor of land exercise reasonable care to protect
players from certain risks under specified circumstances. As we have
previously discussed, Summy’s lawsuit was based on the City’s failure to
take the ordinary precautions a reasonable golf course owner or operator
would take. This claim falls within the duty of possessors of land
recognized in section 344.
 The City also relies on the public duty doctrine: if the government
owes a duty to the general public, it has no liability to any one
individual when it fails to perform this public duty. See Kolbe v. State,
625 N.W.2d 721, 729 (Iowa 2001). This doctrine is inapplicable here
because the City’s duty was one owed to invitees on the golf course, not to
the public at large. See id. (stating doctrine does not apply if there is
a particular relationship between the governmental entity and the injured
plaintiff that gives rise to a special duty). We conclude, therefore, that
the trial court did not err in refusing to direct a verdict in favor of the
City.
 VI. Summary and Disposition.
 The district court abused its discretion in excluding property owners
in the City of Des Moines from the trial jury without requiring an
individualized showing of bias. The defendant did not demonstrate,
however, that this error resulted in prejudice. The trial court properly
submitted this case to the jury on the basis of the City’s failure to
exercise reasonable care to protect invitees from the harmful acts of third
parties, as set forth in section 344 of the Restatement (Second) of Torts.
In addition, the court correctly determined that the doctrine of sole
proximate cause was not applicable. Finally, the trial court did not err
in denying the City’s motion for a directed verdict because, contrary to
the City’s arguments, the City owed a duty to the plaintiff under section
344, this duty did not fall within the public-duty doctrine, and the City
was not immune under section 670.4(10). Finding no reversible error, we
affirm.
 AFFIRMED.
 All justices concur except Cady, J., who dissents, and Wiggins, J.,
who takes no part.
 #10/03-1807, Summy v. City of Des Moines
CADY, J. (dissenting).
 I respectfully dissent from the conclusion by the majority that the
district court’s systematic exclusion of property owners from the jury
panel did not constitute reversible error. The majority reached this
conclusion by applying the incorrect standard, requiring a showing of
prejudice, resulting in a decision that seriously undermines the basic
democratic ideals responsible for the strength of, and confidence in, our
American jury system.
 I acknowledge that courts normally apply the prejudice standard to
decide if defects and errors in the jury-selection process will support a
reversal of the judgment. This standard, applied by the majority in this
case, requires that error in the selection of the jury must be accompanied
by a showing of prejudice to the challenging litigant in order to justify a
reversal of the judgment. It recognizes the right of each litigant to a
fair and impartial jury, and, based upon this right, properly requires a
showing that the litigant was deprived of a fair and impartial jury due to
the error. In other words, if the jury members ultimately selected were
fair and impartial despite the error, then the error in selecting the jury
was harmless.
 While the landscape of the law is dominated by the primary colors of
general principles, subtle shades of exceptions must be observed to fully
depict the overall brilliance of the composite of justice. In this case,
this essential shading is found in one of the fundamental hues of our
American jury system—an impartial jury from a cross-section of the
community. See Ballard v. United States, 329 U.S. 187, 195, 67 S. Ct. 261,
265, 91 L. Ed. 181, 186-87 (1946). When this pillar is systematically
removed by those charged with the responsibility to oversee the jury-
selection process, the injury and prejudice to an individual litigant is
replaced by a greater injury not only to the jury system itself, but “to
the law as an institution, to the community at large, and to the democratic
ideal reflected in the processes of our courts.” Id. at 195, 67 S. Ct. at
265, 91 L. Ed. at 187. “The evil lies in the admitted exclusion of an
eligible class or group in the community in disregard of the prescribed
standards of jury selection.” Id.
 Such action by the court “‘destroy[s] the basic democracy and
classlessness of jury personnel,’” fails to give a litigant “‘the type of
jury to which the law entitles him,’” and deprives litigants “‘a right
which the lawmakers have not seen fit to withhold.’” Id. (quoting United
States v. Roemig, 52 F. Supp. 857, 862 (N.D. Iowa 1943)). The gist of the
problem was succinctly stated by the United States Supreme Court in Thiel
v. Southern Pacific Co., 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 2d 1181
(1946):

 The American tradition of trial by jury, considered in
 connection with either criminal or civil proceedings, necessarily
 contemplates an impartial jury drawn from a cross-section of the
 community. This does not mean, of course, that every jury must
 contain representatives of all the economic, social, religious,
 racial, political and geographical groups of the community; frequently
 such complete representation would be impossible. But it does mean
 that prospective jurors shall be selected by court officials without
 systematic and intentional exclusion of any of these groups.
 Recognition must be given to the fact that those eligible for jury
 service are to be found in every stratum of society. Jury competence
 is an individual rather than a group or class matter. That fact lies
 at the very heart of the jury system. To disregard it is to open the
 door to class distinctions and discriminations which are abhorrent to
 the democratic ideals of trial by jury

Thiel, 328 U.S. at 220, 66 S. Ct. at 985-86, 90 L. Ed. at 1184-85
(citations omitted).
 Our legislature has established those groups of individuals who are
eligible for jury service, and it has even specifically provided that any
challenge to a potential juror’s status as a taxpayer must be made during
voir dire based upon a specific finding of unfair prejudice. Iowa Code
§ 624.11A. It is not the role of courts to depart from this legislative
standard and systematically remove groups from the community that our
legislature has seen fit to include. That is a clear abuse of judicial
authority, inflicted on a critical component of our system of justice, and
it requires that we look beyond the general rule to draw out an exception
that “reversible error does not depend on a showing of prejudice in an
individual case.” Ballard, 329 U.S. at 195, 67 S. Ct. at 265, 91 L. Ed. at
186 (footnote omitted).
 The rule that should be applied in Iowa to claims of error in the
selection of a jury is that such error will not result in a reversal of the
judgment unless either individual prejudice is shown or there has been
intentional and systematic exclusion of a group of jurors. This is the
rule followed by the United States Supreme Court, as well as many state
courts. See id.; see, e.g., Alvarado v. State, 486 P.2d 891, 899
n.20 (Alaska 1971) (no showing of individual prejudice required); People v.
Bell, 778 P.2d 129, 137 n.4 (Cal. 1989) (“A criminal defendant who asserts
a systematic exclusion of a cognizable class of prospective jurors in a
pretrial challenge to the jury venire or panel need not show that his trial
jury was underrepresentative.”); Wilkins v. State, 609 P.2d 309, 311 (Nev.
1980) (“[A]bsent either a showing of systematic, class-based exclusion of
prospective jurors or a showing of prejudice, an irregularity in the
selection of jurors, without more, must be deemed harmless error.”
(Emphasis added.)); State v. Strodes, 357 N.E.2d 375, 377-78 (Ohio 1976)
(“Unless prejudice to the defendant or the systematic and intentional
exclusion of a group is shown, we will not reverse a judgment because of
minor and technical defects in jury-selection procedures.” (Emphasis
added.)), vacated on other grounds, 438 U.S. 911, 98 S. Ct. 3135, 57 L. Ed.
2d 1154 (1978).
 The majority rejects this approach essentially on two grounds.
First, it finds the no-prejudice rule inapposite to this case because the
error here occurred after the jury panel was returned. This, of course, is
a distinction without a difference. When a judge acts to remove a class of
jurors from the jury panel, what possible difference would it make to the
ideals we are trying to observe if the illegal action was done before,
during, or after the drawing and returning of the jury? In each instance,
the evil inflicted is the same, and it is equally abhorrent to our
democratic ideals of a jury trial. In each instance, the prejudice is the
same. In each instance, prejudice is inherent in the illegal act of
preventing a party from selecting a jury from a panel composed of a
representative class of people.
 Second, the majority relies on two of our prior cases in which we
previously indicated that prejudice will not be presumed. See Alber v.
City of Dubuque, 251 Iowa 354, 363, 101 N.W.2d 185, 191 (1960); Johnson v.
City of Waterloo, 140 Iowa 670, 671, 119 N.W. 70, 71 (1909). Yet, these
cases only express a general rule, and there is no indication we have ever
considered the question from the perspective expressed in Ballard and
Thiel. Additionally, the court in Alber applied the prejudice standard
only after finding that it was a custom in this State to exclude taxpayers
in tort cases against a city; it was in the best interest of the taxpayer
jurors to exclude them; and the decision to exclude jurors was within the
discretion of the trial court. See Alber, 251 Iowa at 363, 101 N.W.2d at
190. Thus, these cases have no significance today because there is now a
statute governing the matter, and the discussion of prejudice was not
subject to the scrutiny of the institutional injury.
 If we truly embrace our jury system in this State, we should be
willing, indeed quick, to implement rules to protect and preserve those
fundamental concepts responsible for its historical success. Instead, the
prejudice standard adopted in this case literally means no litigant could
get relief from the illegal acts of a judge who systematically excludes a
class of people from the jury as long as the jurors ultimately selected to
serve on the jury were found to be fair and impartial. Yet, our rules must
not just strive to achieve fairness and impartiality in the individual
jurors selected. Under the majority’s rule, a judge could systematically
exclude all women from the jury as long as the men selected would be fair
and impartial. This is a barbaric concept, which the prejudice standard
was never intended to sanction. A litigant is entitled to a fair and
impartial jury selected from a representative class as determined by our
legislature, and the loss of this fundamental principle through the
improper actions of a trial judge and the implementation of an overly
strict appellate standard can only lead to the erosion of the jury system.
 I would hold that the trial court error in this case requires a new
trial without any showing of prejudice to the City.

-----------------------
 [1] Summy’s wife is also a plaintiff, but we refer to Summy alone for
simplicity’s sake.
 [2] The record does not show how the court’s ruling was implemented.
Consequently, we do not know that the ruling actually caused any juror to
be rejected.

 [3] Having concluded the trial court abused its discretion in
excusing property owners from the trial jury, we need not consider the
other grounds upon which the City challenged the court’s action.
 [4] Because the error in this case occurred after the drawing and
returning of the jury, as we decided in addressing the plaintiff’s error-
preservation argument, cases that hold no prejudice need be shown when the
court inappropriately exercises its supervisory authority over the jury
process are inapposite.
 [5] The City expends considerable effort in its brief detailing the
evidence of Thomas’ s negligence, concluding this evidence supports a sole-
proximate-cause instruction. But proof that a third party’s negligence was
a proximate cause of the plaintiff’s injury does not warrant submitting the
defense of sole proximate cause. There must be evidence from which it may
be concluded that the third party’s negligence was a superseding cause of
the harm so as to make it the sole proximate cause of the harm.

 [6] There apparently was little dispute in this case that Thomas was
negligent. Even though section 344 encompasses “physical harm caused by
the accidental, negligent, or intentionally harmful acts of third persons,”
see Restatement (Second) of Torts § 344, the court’s instruction stated the
owner or operator of a golf course had “the obligation to exercise
reasonable care to prevent injuries caused by the negligence of third
persons.” (Emphasis added.)